Approved: _____Kaiya A_____
KAIYA ARROYO
Assistant United States Attorney

Before: THE HONORABLE ANDREW E. KRAUSE
United States Magistrate Judge
Southern District of New York

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :   **COMPLAINT** 23 mj 589
                                    :
         - v.-                      :   Violation of 21 U.S.C.
                                    :   § 846
EFRAIN FLORES RAMIREZ, and          :
CHRISTIAN REYES PALOMARES           :   COUNTY OF OFFENSE:
                                    :   WESTCHESTER
              Defendants.           :
                                    :
----------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

Richard J. Light, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration, and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

1. Between at least on or about January 20 and January 23, 2023, in the Southern District of New York and elsewhere, EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, conspired to distribute and possess with intent to distribute was 50 grams or more of methamphetamine, its salts, isomers, and salts of its

isomers, to wit, crystal meth, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents and others, as well as my examination of reports, records, and other evidence. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my review of reports and records in this investigation, my conversations with other law enforcement officers, and my own participation in this investigation, I know that since at least on or about January 20, 2023, the DEA has been investigating the trafficking and distribution of narcotics in Yonkers, New York with respect to specific sources of supply from locations outside of Yonkers. As set forth in detail below, in furtherance of this investigation, law enforcement utilized a confidential informant to conduct a controlled purchase of narcotics from EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, and others known and unknown, which resulted in the recovery of 37 kilograms of crystal meth found in a backpack held by PALOMARES and in a subsequent search of PALOMARES' apartment:

   a. Based on my review of reports and records in this investigation, my conversations with other law enforcement officers, and my own participation in this investigation, I know that a confidential informant ("CI-1"),[1] working with

---

[1] CI-1 has been assisting the DEA in connection with this investigation and several other investigations for approximately 20 years in exchange for favorable immigration status. While CI-1 does have criminal history, dating prior to 2006, CI-1 has had no convictions since that time and has been arrested once. During his time working with the DEA, CI-1 has provided information that has been independently corroborated and has proven reliable.

and at the direction of the DEA, has been in recent communication with RAMIREZ regarding the distribution and sale of narcotics.

b. According to statements made to CI-1 by RAMIREZ, on or about January 20, 2023, RAMIREZ travelled from Atlanta, Georgia to New York City and contacted CI-1 and a third individual at approximately 6:00 p.m. that day. The three agreed to meet at the Metro North Woodlawn Station. When RAMIREZ arrived at the station, CI-1 agreed to take RAMIREZ to a particular hotel in Yonkers, New York ("Yonkers Hotel") where RAMIREZ planned to reside for multiple days. At the hotel, CI-1 and RAMIREZ discussed the potential purchase of different narcotics, including crystal meth.

c. On or about January 22, 2023, CI-1 arranged to meet with RAMIREZ on or about January 23, 2023, at the Yonkers Hotel to purchase narcotics. After CI-1 arrived at the hotel, RAMIREZ made a telephone call to a man he identified as "Chepo." On the call, "Chepo" and RAMIREZ discussed arranging CI-1's purchase of crystal meth. "Chepo" then provided RAMIREZ with the address of a grocery store located on 101st Avenue in Queens, New York (the "Grocery Store"). "Chepo" then stated, in sum and substance, that CI-1 could "check" one kilogram of crystal meth and then order additional kilograms, which I understand to mean that CI-1 could inspect one kilogram and then make a determination if CI-1 would like to purchase more than one kilogram.

d. Following the call, CI-1 and RAMIREZ drove to the Grocery Store in a white Ford Escape (the "Vehicle"). Once parked outside the Grocery Store, law enforcement officers stationed at the scene observed a man, later identified as CHRISTIAN REYES PALOMARES, approach the Vehicle and enter the Vehicle's rear driver's side door.

e. According to CI-1, PALOMARES revealed a brown, bag (the "Brown Bag") containing a white, rock-like substance that appeared to be approximately one kilogram of crystal meth. PALOMARES then gave the kilogram to CI-1 to inspect and stated, in sum and substance, that "he can get more if they like it."

f. Approximately three minutes after PALOMARES entered the Vehicle, law enforcement officers observed him exit the Vehicle and walk south along 123rd Street towards 103rd Avenue. I, along with other officers, maintained visual surveillance on PALOMARES as he walked to a particular apartment building

located on 101st Avenue (the "Apartment Building"). PALOMARES then entered the Apartment Building and remained there for approximately 50 minutes.

   g.   CI-1 and RAMIREZ remained in the Vehicle for approximately 50 minutes. Ultimately, CI-1 and RAMIREZ contacted "Chepo" by telephone and agreed that "Chepo" would arrange for an additional nine kilograms of crystal meth to be delivered to the Vehicle.

   h.   Following the call with "Chepo," law enforcement officers observed PALOMARES exit the Apartment Building with a weighted, black backpack (the "Black Backpack") and return to the Vehicle. According to CI-1, PALOMARES opened the Black Backpack and revealed nine additional bags containing a white, rock-like substance that appeared to be crystal meth. Upon visual observation of the contents of the Black Backpack, CI-1 signaled to law enforcement to make an arrest.

   6.   Law enforcement thereafter arrested RAMIREZ and PALOMARES. Both RAMIREZ and PALOMARES were given *Miranda* warnings in Spanish using a Spanish-speaking interpreter, and both RAMIREZ and PALOMARES indicated their understanding and agreed to speak to law enforcement.

   a.   RAMIREZ then agreed to a post-arrest *Mirandized* interview in which he stated, in sum and substance, that his role in the scheme was "to count the money." RAMIREZ further stated that "Chepo" informed him that he would earn $1,000.00 for his role in the execution of the deal, and that "Chepo" had sent him to "oversee the operation." RAMIREZ confirmed that he saw the narcotics in the Vehicle, and that he knew that the substances brought to the Vehicle were drugs.

   b.   PALOMARES also agreed to a post-arrest *Mirandized* interview in which he stated, in sum and substance, that he had arrived in the United States approximately two weeks prior and had been residing in a single bedroom apartment located in the Apartment Building (the "Apartment"). He further stated that he had been recruited to serve as the look-out for the Apartment by a friend that he had met in Mexico and who also resided in the Apartment. PALOMARES further stated that he was paid $1,000.00 to serve as the look-out, and that he also received free room, board, and food.

   7.   Following his arrest, PALOMARES provided written consent to search the Apartment. PALOMARES provided law enforcement with a set of keys that unlocked the Apartment's front

4

door. During their search, law enforcement recovered an additional 22 bags containing a white, rock-like substance inside of a tall, black dresser located in the bedroom of the Apartment. A sample of the substance field-tested positive for methamphetamine. The amount of crystal meth recovered from the Vehicle, the Black Backpack, and the Apartment totaled approximately 37 kilograms. A photograph of the recovered narcotics is depicted below:



8. Based on the information described above, I respectfully submit that EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, participated in a conspiracy to distribute, and possess with intent to distribute, methamphetamines on or about January 23, 2023.

WHEREFORE, deponent prays that EFRAIN FLORES RAMIREZ and CHRISTIAN REYES PALOMARES, the defendants, be imprisoned or bailed, as the case may be.

_____
RICHARD J. LIGHT
Task Force Officer
Drug Enforcement Administration

Sworn to me this
24th day of January, 2023.

_____
HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK